In the Matter of the Arbitration Between
UNITED STATES POSTAL
SERVICE, Employer,

and

AMERICAN POSTAL WORKERS
UNION, Union, Dorothy Woods,
Grievant/Petitioner.

No. 82 Civ. 6157 (CBM).

United States District Court,
S.D. New York.

April 15, 1983.

John H. Jarvis, New York City, for Dorothy Woods.

John S. Martin, Jr., U.S. Atty. by Jordan Stanzler, Asst. U.S. Atty., New York City, for U.S. Postal Service; Lawrence A. Dinerstein, Sr. Asst. Regional Labor Counsel, U.S. Postal Service, New York City, of counsel.

## OPINION

MOTLEY, Chief Judge.

This is an action seeking modification of an arbitration award pursuant to 9 U.S.C. section 11. Dorothy Woods (Woods) is, according to the "petition" filed in this case, a resident of New York State and a member of respondent American Postal Workers Union (the Union). Named also as a respondent is the United States Postal Service (the Postal Service). Jurisdiction is asserted under 9 U.S.C. § 11; 28 U.S.C. § 1332; and 49 U.S.C. § 10102, (Petition at ¶ 4).[1]

This action is now before the court on Woods' motion to modify the arbitration award pursuant to 9 U.S.C. section 11,[2] and on respondent Postal Service's motion to dismiss the petition for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Woods' motion to modify the arbitration award is denied, and the Postal Service's motion to dismiss the petition is granted.

## FACTS

The pertinent background facts are undisputed. Woods was an employee of the Postal Service. After having plead guilty to a charge of criminal possession of a weapon in the third degree and to disorderly conduct on two separate occasions, Woods was notified that her employment with the Postal Service would be terminated. The Union instituted a grievance proceeding, which culminated in arbitration between the Union and the Postal Service, pursuant to the governing collective bargaining agreement.[3] The arbitrator determined that there was no just cause for the termination, and ordered Woods' reinstatement with continued seniority, but without back pay.

Woods then commenced the instant action, seeking modification of the arbitrator's award. Woods seeks an award of back pay, restoration of unused vacation time, and "retroactive sick leave, dating back to October 1, 1981, the first month after her unjust removal that she was denied her sick leave allowance." (Petition at ¶ 10(c).)

## DISCUSSION

### A. Subject Matter Jurisdiction

The Postal Service contends that Woods' petition is factually defective in that Woods lacks standing to sue under 9 U.S.C. section 11 for modification of the arbitration award because she was not a "party" to the arbitration in question within the meaning of that section. Before reaching the question of standing as presented by the Postal Service, however, the court will examine Woods' jurisdictional allegations.

### 1. Jurisdiction Pursuant to the Arbitration Act

■ Woods asserts that this court has jurisdiction of this action under the federal

---

1. 49 U.S.C. § 10102 is a definitional section of the Interstate Commerce subtitle of Title 49. The court is at a loss to determine on what basis Woods asserts that this court has jurisdiction under the cited section. It will not, however, be necessary for the court to pursue this mystery, since it appears that Woods has no standing to challenge the arbitration award and has in any event failed to assert proper grounds for modification of the award.

2. The action was commenced by the filing of a document denominated a "petition," which contains jurisdictional allegations and seeks modification of the arbitration award. The instant motion was filed five days later. It relies solely on the petition. Both the petition and the motion seek modification of the arbitration award. No other relief is sought by Woods.

3. The agreement, entitled "Agreement between United States Postal Service and American Postal Workers Union, AFL–CIO [, and] National Association of Letter Carriers, AFL–CIO," and dated "July 21, 1981-July 20, 1984" is appended as an exhibit to the Postal Service's Memorandum of Law. It will be cited in this opinion as "the Agreement."

Arbitration Act, "Title 9,. United States Code, and particularly under Section 11 thereof...." (Petition at ¶ 4.) The Arbitration Act does not, however, create an independent basis of federal district court jurisdiction. The existence of diversity or federal question jurisdiction must be established if a district court is to entertain an action under the Arbitration Act. *Hamilton Life Insurance Co. of New York v. Republic National Life Insurance Co.,* 291 F.Supp. 225, 232 n. 3 (S.D.N.Y.1968), *aff'd,* 408 F.2d 606 (2d Cir.1969). The court will therefore examine Woods' allegation of diversity jurisdiction under 28 U.S.C. section 1332. (*See* Petition at ¶ 4.)

### 2. *Diversity Jurisdiction*

█ According to the petition, Woods is a "resident of Bronx County, the City and State of New York, is an employee of [the Postal Service] and a member of [the Union]." (Petition at ¶ 1.) It is well settled that diversity jurisdiction requires that no plaintiff be a citizen of the same state as any defendant. In other words, complete diversity is required. *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–2403, 57 L.Ed.2d 274 (1978).

█ Here, Woods is by her own admission a resident[4] of New York State and a member of respondent Union. "A [labor] union for diversity purposes is a citizen of each state in which it has members." *Co-*chrane *v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 263 (8th Cir.) (footnote omitted), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Hawkins,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). *See United Steelworkers of America v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). *See also Loss v. Blakenship,* 673 F.2d 942, 949 (7th Cir.1982). It is clear from Woods' own pleadings that the respondent Union has at least one member, namely Woods, in New York State. Furthermore, Woods' own uncontroverted pleadings assert that the Union "is an organization formed under the Laws of the United States ... and the State of New York ... and maintains an office, and regularly conducts its business, within the City, County and State of New York...." (Petition at ¶ 3.) The court finds that there is no diversity of citizenship between Woods and the Union, and that this court does not, therefore, have diversity jurisdiction of this action.[5]

### 3. *Woods' Standing to Challenge the Arbitration Award*

Section 11 of Title 9, United States Code, provides that a district court "may make an order modifying or correcting [an arbitration] award upon the application of any *party to the arbitration....*" (1976) (emphasis supplied). The Postal Service argues that, although Woods' discharge was the subject of the arbitration proceeding in

---

**4.** The court, of course, recognizes that citizenship and residency are not synonymous for the purpose of establishing diversity jurisdiction. *See, e.g., Jagiella v. Jagiella,* 647 F.2d 561, 563 (5th Cir.1981), and cases cited therein.

For the purposes of this opinion, however, the court assumes that Woods is a citizen as well as a resident of New York. Her allegation of New York "residency" has not been challenged, and the arbitrator's opinion indicates that Woods has been employed in New York by the Postal Service since 1968. *See* Exhibit A to Petition, at 3.

**5.** Since the court has found that there is no diversity of citizenship between Woods and the Union, it is unnecessary for the court to reach the issue of the citizenship of the Postal Service for the purpose of diversity jurisdiction. The court notes that the Postal Service is a statuto-rily created "independent establishment of the executive branch of the Government of the United States...," 39 U.S.C. § 201 (1976), and that district court jurisdiction of suits by or against the Postal Service is conferred by, *e.g.,* 39 U.S.C. §§ 409 and 1208 (1976), neither of which sections has been invoked by Woods. The court, while declining to decide this issue, expresses grave doubts as to whether the Postal Service would have been a proper party in an action founded upon diversity jurisdiction had there been diversity between Woods and the Union. *See, e.g., Monsanto Co. v. Tennessee Valley Authority,* 448 F.Supp. 648, 650 (N.D.Ala.1978) ("A corporation created by an Act of Congress and whose activities ... are not to be confined to a single state, is not a citizen of any state, absent a specific statutory provision for its citizenship in a state.")

question, Woods was not a "party" to the arbitration within the meaning of the above-cited section. It is argued that the sole "parties" to the arbitration proceeding were the Union and the Postal Service, because they, and not Woods, were parties to the collective bargaining agreement pursuant to which the arbitration was conducted. The Postal Service contends that the Arbitration Act does not grant remedies directly to individual employees whose interests are represented by unions pursuant to collective bargaining agreements. The court agrees.

In *Acuff v. Papermakers and Paperworkers, AFL–CIO*, 404 F.2d 169 (5th Cir.1968), *cert. denied*, 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969), a union had brought an action in the district court under section 301 of the Labor Management Relations Act to compel the arbitration of certain employee dismissals. The district court ordered the union and employer to proceed to arbitration, but retained jurisdiction over the matter. 404 F.2d at 170. Upon conclusion of the arbitration proceeding, certain individual employees who were dissatisfied with the arbitrator's decision sought to intervene in the action for the purpose of moving to vacate the arbitration award. The employees' proposed complaint suggested that their action arose under 9 U.S.C. section 10, a section of the Arbitration Act. *Id.* at 171 n. 2. The district court denied the motions to intervene. *Id.* at 171.

On appeal, the Fifth Circuit noted that "[9 U.S.C. section 10] speaks of vacation of an award 'upon the application of any party to the arbitration,'" and went on to state that "[s]ince the Union and the Company, *not the employees, were parties to the arbitration*, [the employees'] jurisdictional allegation is clearly deficient." The court found, however, that where intervention is sought as of right, no independent ground for jurisdiction need be asserted. *Id.* at 171, 171 n. 2. The court nonetheless dismissed the appeal, holding that the right to arbitration was "an incident not of the employment relationship as such but of the collective bargaining relationship," [6] and that "[u]nder this [collective bargaining] agreement it is the Union and the Company that have the right to demand arbitration. Thus, they have the right to conduct the arbitration as well." *Id.* at 172. The union, according to the court, was "authorized to assume full responsibility for a grievance it [pursued], without the intervention of the union members immediately concerned." *Id.* at 171.

Similarly, in *Dundas Shipping & Trading Co. Ltd. v. Stravelakis Bros., Ltd.*, 508 F.Supp. 1000, 1003 (S.D.N.Y.1981), the court held that a movant for vacatur of an arbitration award who was not a party to the contract pursuant to which the dispute was submitted to arbitration was not a "party" to the arbitration, and thus had no standing to move to vacate the award.

Although both of the above-cited determinations were based on section 10 of the Arbitration Act (9 U.S.C. § 10), their holdings are equally applicable in the instant case, since section 11 of the Act requires that a motion to modify an arbitration award be made by a "party" to the arbitration.

Woods asserts, however, that in contrast to the situation in *Acuff*, where the union had the sole right to make the determination whether to proceed to arbitration on an employee grievance,[7] the Agreement at issue in this case grants Woods, as an individual employee, the "right to initiate [a grievance proceeding] without union intervention." [8] In support of this argument, Woods cites a portion of Article 15 of the Agreement, as follows: "'The employee, *if he or she so desire* [sic], may be accompanied and represented by ... a union representative.'" (emphasis in original).[9] Woods asserts that the cited language "makes quite clear that, in fact, the party is the

---

6. 404 F.2d at 172 (citations omitted).

7. *See id.* at 171.

8. Affirmation of John H. Jarvis in Opposition (Jarvis affirmation) at ¶ 2.

9. *Id.* at ¶ 4.

employee who may make use of the Union's Representatives." [10]

Woods' argument, while superficially appealing, misrepresents the nature of the grievance-arbitration process as set forth in the Agreement. The grievance-arbitration procedure is a four-step process. The language quoted by Woods appears in Article 15.2, Step 1: (a), which governs Step 1 of the process, the initial complaint. At this stage, a grievance may be initiated either by the individual employee or by the Union. An employee who initiates a grievance at Step 1 may, "*if he or she so desires,* ... be accompanied and represented by the employee's steward or a Union representative." [11] The Agreement provides that the grievance may be settled at Step 1, or, in the event of a failure to reach a settlement, that the employee's immediate supervisor is to render a decision on the grievance.[12]

After a decision at Step 1, pursuit of the grievance rests solely in the hands of the Union. The Agreement provides that "[t]he *Union* shall be entitled to appeal an adverse decision to Step 2 of the grievance procedure...." [13] This section further provides that "the grievant *shall* be represented at Step 2 for *all* purposes by a steward or a Union representative *who shall have authority to settle or withdraw the grievance*...." [14] As at Step 1, if the Union and the employer are unable to reach a settlement, the employer is to render a decision, from which the "*Union* may appeal" to Step 3 of the process—consideration of the grievance at the regional level.[15]

At the regional level of the process, "[t]he grievant *shall* be represented ... by a Union's Regional representative, or designee." [16] Once again, the Agreement provides that "[t]he *Union* representative shall have authority to settle or withdraw the grievance in whole or in part." [17] If the Union and the employer are unable to agree, the "[e]mployer's written Step 3 decision on the grievance shall be provided to the *Union's* Step 3 representative...." [18] It is only after an adverse decision by the employer at Step 3 that the process turns to arbitration.

The Agreement provides that "[t]he *Union* may appeal an adverse decision directly to arbitration at the Regional level ...; provided the [e]mployer's Step 3 decision states that no interpretive issue under the National Agreement ... is involved in the case.[19] If, on the other hand, either the Union or the employer maintains that such an interpretive issue is present, "the *Union* representative shall be entitled to appeal an adverse decision to Step 4 (National level) of the grievance procedure." [20]

The Agreement also provides that, if grievances appealed to Step 3 involve "the same, or substantially similar issues or facts, *one* such grievance *to be selected by the Union* representative shall be designated the 'representative' grievance," and that such a " 'representative' " grievance may be appealed to Step 4 or to arbitration. The other grievances are "held at Step 3 pending resolution of the 'representative' grievance...." [21]

---

10.  *Id.*

11.  *See* Agreement at Article 15.2, Step 1: (a) (emphasis supplied).

12.  *See id.* at Article 15.2, Step 1: (b) and (c).

13.  *Id.* at Article 15.2, Step 1: (d) (emphasis supplied).

14.  *Id.* at Article 15.2, Step 2: (c) (emphasis supplied).

15.  *Id.* at Article 15.2, Step 2: (h) (emphasis supplied); Article 15.2, Step 3: (a).

16.  *Id.* at Article 15.2, Step 3: (b) (emphasis supplied).

17.  *Id.* (emphasis supplied).

18.  *Id.* at Article 15.2, Step 3: (c) (emphasis supplied).

19.  *Id.* at Article 15.2, Step 3: (d) (emphasis supplied).

20.  *Id.* at Article 15.2, Step 3: (e) (emphasis supplied).

21.  *Id.* at Article 15.2, Step 3: (f) (emphasis supplied).

As the above overview of the grievance-arbitration process under the Agreement makes clear, the union has sole authority over the pursuit of grievances after Step 1. Only the Union may initiate an appeal from an adverse employer decision, and *"[n]o grievance may be arbitrated ... except when ... notice is given the [e]mployer" by the ... Union involved."* [22] It is also important to note that, under the Agreement, "[t]he failure of the employee or the Union in Step 1, *or the Union thereafter* to meet the prescribed time limits of the Steps of [the] procedure, *including arbitration,* shall be considered as a *waiver* of the grievance." [23]

It is therefore clear that Woods' arguments that "the grievant specifically has the right, under this [A]greement to proceed on her own, (Article 15 § 2), or to be represented by the Union, as she 'so desires' ", and that "the Union gives the employees, or does not reserve exclusively to themselves [sic] the rights and choice under Article 15 of this Agreement" [24] must fail. Under the Agreement, the individual employee does not have the right to appeal adverse employer decisions, nor has she the right "to proceed on her own" to arbitration.

> "[A]n individual employee has [no] absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.... In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration.
>
> \* \* \* \* \* \*
>
> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the

employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation.

*Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). The Agreement at issue in this case clearly "gives the union discretion to supervise the grievance machinery and to invoke arbitration." *Id.* Thus, the Union and the employer are the sole "parties" to arbitration under the Agreement.

As the Fifth Circuit stated in *Acuff,* "[i]t would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration stage at all, could not be authorized to assume full responsibility for a grievance it did pursue, *without the intervention of the individual union membe[r] immediately concerned."* 404 F.2d at 171 (emphasis supplied).

The court therefore holds that Woods was not a "party" to the challenged arbitration proceeding within the meaning of 9 U.S.C. section 11, and therefore has no standing to seek modification of the arbitrator's award.

The court notes, however, that an employee whose grievance has been processed by a union through the arbitration stage may have standing to challenge the arbitration award in certain limited circumstances, none of which is present here.

Such an employee may have standing to attack an arbitration award under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, upon a showing that the union breached its statutory duty of fair representation, or upon a showing of fraud or deceit. *See Acuff,* 404 F.2d at 171; *Andrus v. Convoy Co.,* 480 F.2d 604, 606 (9th Cir.), *cert. denied,* 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228 (1973); *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781,* 629 F.2d 1204, 1210 (7th Cir.1980) (dictum), *cert. denied,*

---

**22.** *Id.* at Article 15.4(A)(2) (emphasis supplied).

**23.** *Id.* at Article 15.3(b) (emphasis supplied).

**24.** Jarvis affirmation at ¶ 5.

451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981).

Similarly, individual employees have been held to have standing to sue for enforcement of an arbitral award under LMRA section 301 where the union has failed to act upon the award, *Lee v. Olin Mathieson Chemical Corp.*, 271 F.Supp. 635, 638 (W.D. Va.1967), and to have standing to intervene to appeal the vacatur of an arbitration award where the union declined to appeal the district court's decision, *F.W. Woolworth Co.*, 629 F.2d at 1210–13.[25]

Here, however, Woods has not invoked section 301 of the LMRA as a jurisdictional ground, and has not, in any event, alleged any impropriety or lack of diligence on the part of the Union. Rather, as will be seen, she is merely dissatisfied with the arbitrator's award.

The court has found that Woods has invoked no proper ground for subject matter jurisdiction, and that she lacks standing to challenge the arbitrator's award, since she was not a "party" to the arbitration proceeding within the meaning of 9 U.S.C. section 11. The Postal Service's motion to dismiss her petition for lack of subject matter jurisdiction must, accordingly, be granted. The petition must also be dismissed as against the respondent Union for lack of subject matter jurisdiction.

**A.  *Failure to State a Claim Upon Which Relief May be Granted***

The Postal Service has also moved to dismiss Woods' petition for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The court finds that, even if subject matter jurisdiction and standing had properly been established, the petition would have to be dismissed for failure to state a claim.

**25.** The court recognizes that section 1208(b) of the Postal Service Act (39 U.S.C.) authorizes suits for violations of labor contracts between the Postal Service and labor organizations representing Postal Service employees, and that its language is substantially similar to that of section 301 of the LMRA. *Cf.* 39 U.S.C. § 1208(b) with 29 U.S.C. § 185(a). *See also Miles v.*

The sole grounds upon which Woods seeks modification of the award are that: a) the Arbitrator found that there was no just cause for the removal of the grievant [; and] b) the Arbitrator's findings are unclear, or not made, on the loss of vacation days retroactive to the date of separation, and sick leave to which the grievant would have been entitled had she not been unjustly removed.

Petition at ¶ 10.

Woods seeks to modify the award pursuant to 9 U.S.C. section 11. That section, however, provides that an arbitration award may be modified only:

(a) [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award [;]

(b) [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted [; or]

(c) [w]here the award is imperfect in a matter of form not affecting the merits of the controversy.

9 U.S.C. § 11 (1976).

■■■  "A federal court may . . . modify an arbitration award only if one of the grounds specified in 9 U.S.C. [§ 11] is found to exist." *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980). Clearly, Woods has not asserted any ground for modification of the award that is cognizable under the statute.

Woods' petition fails entirely to state a claim upon which relief can be granted. Her motion, which rests entirely upon her petition, must also be denied.

*United States Postal Service,* 561 F.2d 1348 (9th Cir.1977). The court, however, expresses no opinion as to the relationship of the two statutory provisions, nor as to the ability of a Postal Service employee to challenge an arbitration award under 39 U.S.C. § 1208(b), since neither provision has been invoked by Woods.

**552**

### CONCLUSION

The court has found that Woods has invoked no proper ground of subject matter jurisdiction and that she, in any event, lacks standing to challenge the arbitration award at issue in this case. Woods' petition must therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Dismissal of the petition pursuant to Federal Rule of Civil Procedure 12(b)(6) is also mandated, since the petition asserts no cognizable ground for modification of the arbitration award and therefore fails to state a claim upon which relief can be granted.

Accordingly, the motion of respondent United States Postal Service to dismiss the petition is granted. Since Woods' motion to modify the arbitration award is based solely on her petition, the motion is denied for the above-stated reasons. The petition is dismissed as against the respondent Union for lack of subject matter jurisdiction.