**Barbara J. HOLLINS, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

No. 86 C 2218.

United States District Court, N.D. Illinois, E.D.

Oct. 7, 1986.

Arthur R. Ehrlich, Boldman & Marcus, Chicago, for plaintiff.

Martin B. Lowery, Asst. U.S. Atty., Chicago, for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Barbara J. Hollins ("Plaintiff") brought this action against the United States Postal

Service ("Defendant"), requesting that this court vacate, pursuant to 9 U.S.C. § 10, an arbitration award rendered on January 6, 1986. Currently before the court is Defendant's motion for judgment on the pleadings or, in the alternative, for summary judgment. Since Defendant has presented matters outside the pleadings for the court's consideration, we will treat Defendant's motion as one for summary judgment. *See* Fed.R.Civ.P. Rules 12(c) and 56. For the reasons set forth below, Defendant's motion is granted.

### Facts

The facts, as found by the arbitrator, are as follows. Plaintiff was employed by Defendant as a letter carrier at its Hyde Park, Illinois office, and had been so employed for approximately sixteen years. As a letter carrier, Plaintiff was subject to the 1984 collective bargaining agreement entered into between Defendant and the Union.[1]

On March 28, 1985, Plaintiff solicited a payment of money from James McAllum ("McAllum"), a postal customer, in exchange for Plaintiff's delivery of a United States Treasury check (tax refund) to McAllum. McAllum indicated that he could not pay her then, but promised to do so later. McAllum then returned to work and told his fellow employees about the incident. They urged him to report it to Defendant, which McAllum did.

McAllum was then contacted by Postal Inspector Pytlak. Pytlak arranged to have a postal money order for ten dollars and a note from McAllum enclosed in a letter to Plaintiff. The note read: "3/29/85 Dear Ms. Hollins: Here's the money that you asked for when you delivered my check. Thank you. James McAllum." Pytlak mailed the money order and note to Plaintiff on March 29, 1985, and Plaintiff cashed the money order on or before April 2, 1985.

On July 24, 1985, Plaintiff received written notice from her supervisor that she would be dismissed for her conduct. The Union pursued a grievance on Plaintiff's behalf pursuant to the collective bargaining agreement, and the Union ultimately appealed the grievance to arbitration at the Regional Level.[2] Plaintiff was represented by a private attorney and a Union official at the arbitration hearing. The arbitrator first pointed to Part 661.43 of the Employee and Labor Relations Manual, which directs that an employee will not solicit or accept any gift, gratuity, favor, entertainment, meal, loan, or other thing of value for any performance of his/her official duties. He then concluded that Plaintiff had a fiduciary duty to deliver mail, that letter carriers routinely handle valuables, that Plaintiff could no longer be trusted to deliver mail, and that the length of Plaintiff's service did not outweigh the seriousness of her offense. In short, the arbitrator determined that Defendant had just cause to remove Plaintiff, and denied her grievance.

Plaintiff now seeks to have the arbitration award vacated on the ground that it was procured by fraud. Defendant moves for summary judgment, arguing that (1) Plaintiff has no standing to bring this action, and (2) Plaintiff fails to state a claim upon which relief can be granted. We agree with Defendant.

### Discussion

1. *Standing*

Plaintiff's claim is made pursuant to 9 U.S.C. § 10, which provides in part, "[i]n either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—(a) where the award was procured by corruption, fraud,

---

**1.** Defendant offers the agreement, entitled "AGREEMENT between United States Postal Service and American Postal Workers Union, AFL–CIO, National Association of Letter Carriers, AFL–CIO," and dated "1984–1987," as an exhibit to its motion.

**2.** The Agreement provides only that *the Union* may institute arbitration. The Agreement provides no such right to individual employees.

or undue means...." Defendant contends, however, that this section provides no remedy for Plaintiff. Specifically, Defendant argues that the section confers standing only on a *"party* to the arbitration," (emphasis added), and that the parties to the arbitration were Defendant and the *Union,* not Plaintiff. *See, e.g., Anderson v. Norfolk and Western Railway Co.,* 773 F.2d 880, 882 (7th Cir.1985); *Acuff v. United Papermakers and Paperworkers,* 404 F.2d 169, 171 n. 2 (5th Cir.1968), *cert. denied,* 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969); *Lofton v. United States Postal Service,* 592 F.Supp. 36, 37–38 (S.D.N.Y.1984); *United States Postal Service v. American Postal Workers Union,* 564 F.Supp. 545, 547–551 (S.D.N.Y. 1983).

Plaintiff does not contest Defendant's characterization of the law, nor does she dispute that the Union and not Plaintiff was the party to the arbitration. It is Plaintiff's position that an exception to the standing rule applies when the employee's allegation is that the arbitration award is obtained by fraud. In support of this argument, Plaintiff refers the court to *Andrus v. Convoy Co.,* 480 F.2d 604 (9th Cir.), *cert. denied,* 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228 (1973) and *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167 (5th Cir.1971). In *Harris,* the Fifth Circuit stated that employees cannot attack a final arbitration award "except on the grounds of fraud, deceit or breach of the duty of fair representation or unless the grievance procedure was a 'sham, substantially inadequate or substantially unavailable.'" 437 F.2d at 171 (citations omitted). The *Andrus* court quoted this language from *Harris. See also United States Postal Service v. American Postal Workers Union,* 564 F.Supp. 545, 550 (S.D.N.Y.1983) (employee may have standing upon a showing of fraud or deceit).

After reviewing these decisions and the caselaw upon which these decisions were based, this court concludes, contrary to Plaintiff's position, that those decisions do not stand for the proposition that the standing rules are relaxed whenever the employee alleges any claim of fraud. Rather, these cases indicate that an individual employee may have standing where he otherwise would not when his allegation is that there has been fraud on the part of the *union.* In each of these cases, as well as the decisions cited therein, the courts were clearly concerned with the adequacy of the grievance procedure. *See Harris,* 437 F.2d at 172; *see also Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32 (3d Cir.1968); *Rothlein v. Armour & Co.,* 391 F.2d 574 (3d Cir.1968). Where the court found no genuine issue as to the adequacy of the union's representation, the court refused to permit the plaintiff to sue to vacate the arbitration award. *See, e.g., Harris,* 437 F.2d at 172. Obviously, fraudulent conduct by the union might well create such an issue, just as deceit or breach of the duty of fair representation would create such an issue.

This interpretation of the caselaw is wholly consistent with the policy considerations that underlie the concept of union representation. As Plaintiff's own citation indicates, an employee gains strength through representation by his union but, in return, must sometimes subordinate his individual interests to the interests of the group. Accordingly, in its role as the exclusive agent of the employees in the bargaining unit, the union has the power to sift out frivolous grievances and to abandon the grievance process if it determines that an individual claim is without merit. *See Harris,* 437 F.2d at 171. As the court noted in *Acuff v. United Papermakers and Paperworkers, AFL–CIO,* 404 F.2d 169, 171 (5th Cir.1968):

In order to effectuate the purposes of the labor statutes employees are empowered to organize. This, of course, has resulted in enormous benefits but entails certain burdens as well. One of these is that to some extent the interests of particular individuals are subordinated to the interests of the group both at the contract negotiation stage and there-

after.... This is necessary if a union is to function efficiently. As a result, a union may properly determine not to pursue a member's grievance to the arbitration stage at all. "If the individual employee could compel arbitration of the grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation...." It would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration stage at all, could not be authorized to assume full responsibility for a grievance it did pursue, without the intervention of the individual union members immediately concerned.

*Cert. denied,* 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969) (citations omitted).

■ The check on this expansive power of the union, as we have already pointed out, is the employee's right to complain that the union is not meeting its obligations to its employees. Thus, if an employee alleges that the *union* defrauded him or otherwise failed to represent him adequately, then the individual employee could have standing to sue to vacate an arbitration award even though he was not a party to the arbitration. Plaintiff in the case before us makes no allegation of Union misconduct. Her allegations relate solely to Defendant's conduct. It is clear that the Union has standing to bring this action to vacate the award if it has reason to believe the award was obtained by fraud and, absent an allegation of wrongdoing on the part of the Union, there is no reason to assume that the Union would not do so if such action were appropriate.

Finally, Plaintiff argues that the Seventh Circuit's ruling in *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781,* 629 F.2d 1204 (7th Cir.1980) *cert. denied sub nom., F.W. Woolworth Co. v. Fell,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981) supports her position that she should be allowed to pursue this action. This argument is without merit. In *Woolworth,* a group of employees sought to intervene in an appeal brought by the employer to vacate an arbitration award. The union unsuccessfully opposed the employer in district court, but decided not to file an appeal from the adverse decision. The Seventh Circuit allowed the employees to intervene to prosecute an appeal because the union did not oppose the action and because the employees sought only *to uphold,* and not to vacate, the arbitration award. The facts are thus entirely distinguishable from those in this case and in the cases we have cited, and the Seventh Circuit in *Woolworth* itself distinguished those cases from the case before it:

[I]ndividual employees may not intervene in or maintain suits under the collective bargaining agreement to *set aside* arbitration awards reached in pursuance of the grievance procedure, *particularly in opposition to the union,* so long as the union has represented the employees fairly. *Acuff* and *Andrus,* both *supra* .... The instant case, however, involves neither attempted individual employee intervention in the grievance procedure nor efforts by individual employees to *set aside* the ultimate result of the grievance procedure, namely the arbitration award.

629 F.2d at 1210 (emphasis in original). The Seventh Circuit reiterated this important distinction in *Anderson v. Norfolk and Western Railway Co.,* 773 F.2d 880, 882 (7th Cir.1985). *See also Lofton v. United States Postal Service,* 592 F.Supp. 36, 38–39 (S.D.N.Y.1984) ("the critical factor in *F.W. Woolworth* was that the employees sought to uphold, rather than vacate, the arbitration award"). Plaintiff's reliance upon *Woolworth* is therefore misplaced.

■ For all these reasons, we conclude that Plaintiff does not have standing to bring this action. Even if we were to hold otherwise, however, we would still grant

Defendant's motion because Plaintiff cannot show she is entitled to relief.

## 2. *The Merits*

■ Plaintiff's primary contention is that Defendant covered up or destroyed evidence that would have been helpful to Plaintiff's case.[3] Specifically, Plaintiff argues in her brief (although she does not allege in her complaint) that in order to support Defendant's claim that Plaintiff solicited ten dollars from a postal patron, Defendant presented a letter at the arbitration hearing which allegedly was enclosed with the postal money order and which states that Plaintiff had solicited this money from McAllum. Plaintiff insists that the letter presented by Defendant at the hearing was not the same letter that Plaintiff received with the money order. Plaintiff states that the letter she received with the money order merely expressed McAllum's gratitude and made no reference to Plaintiff's having solicited this money. In support of this assertion, Plaintiff attaches to her brief the affidavits of two people stating that they were present when Plaintiff received the money order and that the original letter did not contain any reference to Plaintiff's having asked for the money.

We cannot agree that Plaintiff's contention, even if true, constitutes fraud that would warrant an order vacating the arbitration award. As Plaintiff readily admits, the issue whether the letter Defendant presented was in fact the letter she received was brought to the arbitrator's attention during the hearing. The arbitrator specifically referred to the matter in his decision, stating that "[t]he Grievant's assertions that there was another note which she discarded in this envelope, are not credited." Arbitrator's decision at 10, ¶ 7. It is therefore clear that Plaintiff's allegation is

not one of fraud; rather, it is a challenge to the arbitrator's credibility determination. Plaintiff's submission of affidavits at this late date does not change the issue from one of credibility into one of fraud. The affidavits simply provide other evidence of the assertion Plaintiff had already put before the arbitrator; i.e., that the letter presented was not the letter she received, but these affidavits do not establish that the arbitration award was in some way procured by fraud.

We, of course, express no view on the propriety of the arbitrator's credibility determination, as such determinations are matters for the arbitrator as the finder of fact, and his decisions are entitled to deference. *See Randall v. Lodge No. 1076,* 648 F.2d 462, 465 (7th Cir.1981); *Amoco Oil Co. v. Oil, Chemical and Atomic Workers Int'l Union,* 548 F.2d 1288, 1293–1294 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). Moreover, in view of our finding that the issue is one of credibility and not fraud, we have no authority under 9 U.S.C. § 10 to vacate the arbitration award in any event. Accordingly, we find Plaintiff's substantive claim to be without merit.

### *Conclusion*

For all the foregoing reasons, Defendant's motion for summary judgment is granted.

---

**3.** Plaintiff's complaint also alleges that a witness for Defendant gave false testimony at the arbitration hearing and that Defendant refused to allow a witness to appear at the hearing who would have testified on the Plaintiff's behalf. The complaint provides no specifics as to the identities of those witnesses, what was said by the witness who allegedly gave false testimony, or what would have been said by the witness who allegedly was not permitted to appear. Plaintiff makes no reference to these allegations in her brief. We find that these allegations do not meet even the minimal requirements of notice pleading; accordingly, these claims are dismissed.