The ASSOCIATION OF CONTRACTING PLUMBERS OF the CITY OF NEW YORK, INC., Plaintiff–Appellant,

v.

LOCAL UNION NO. 2 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, Peter Salzarulo, as President, and Michael Celletti, as Secretary–Treasurer and John and Jane Doe, as members of the Union, Defendants–Appellees.

CONTRACTING PLUMBERS ASSOCIATION OF GREATER NEW YORK, INC., Plaintiff–Appellant,

v.

LOCAL UNION NO. 1 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, Joseph Santoro, as President and Frank Rutter, as Secretary–Treasurer, and John and Jane Doe, as members of the Union, Defendants–Appellees.

United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, and Local 638 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, and Mechanical Contractors Association of New York, Inc., Intervenors–Defendants–Appellees.

The ASSOCIATION OF CONTRACTING PLUMBERS OF the CITY OF NEW YORK, INC., et al., Plaintiffs,

v.

LOCAL UNION NO. 2 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, Peter Salzarulo, as President, Michael Celletti, as Secretary-Treasurer, John and Jane Doe, as members of the Union, Mechanical Contractors Association of New York, et al., Defendants.

The ASSOCIATION OF CONTRACTING PLUMBERS OF the CITY OF NEW YORK, INC., Contracting Plumbers Association of Greater New York, Inc., Local 2, Local 1 and Local 371 and their respective Fringe Benefit Funds, Appellants,

v.

UNITED ASSOCIATION, Local 638 United Association and Mechanical Contractors Association of New York, Inc., Appellees.

Nos. 330, 887 and 888, Dockets 87–7584, 88–7042 and 88–7044.

United States Court of Appeals, Second Circuit.

No. 330: Argued Nov. 18, 1987.

Nos. 887 and 888: Argued Feb. 23, 1988.

Decided March 4, 1988.

Joseph S. Kaming, New York City (Kaming & Kaming, New York City, Elizabeth F. Kaming, of counsel), for The Ass'n of Contracting Plumbers of the City of New York, Inc. and Contracting Plumbers Ass'n of Greater New York, Inc.

Stanley Q. Casey, Garden City, N.Y. (Kennedy & Casey, P.C., Garden City, N.Y., John F. Hamilton, of counsel), for Local Union Nos. 2 and 1, and Local 371 and their Respective Fringe Benefit Funds.

James R. O'Connell, Washington, D.C. (O'Donoghue & O'Donoghue, Washington, D.C., Donald J. Capuano, Francis J. Martorana; Cohen, Weiss & Simon, New York City, Peter Herman, of counsel), for United Ass'n of Journeymen and Apprentices of

the Plumbing and Pipefitting Industry of the U.S. and Canada.

Richard S. Brook, Mineola, N.Y., for Local 638 United Ass'n.

Peter D. Stergios, New York City (Epstein Becker Borsody & Green, P.C., New York City, Jerrold Goldberg, of counsel), for Mechanical Contractors Ass'n of New York, Inc.

Eugene Arons, Merrick, N.Y., for Local Union No. 1.

Before LUMBARD, KEARSE and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

These two appeals involve companion questions about a decision of the United Association of Journeymen and Apprentices of the Plumbing Industry of the United States and Canada, AFL–CIO ("United Association" or "UA"), to award the exclusive right to perform certain work to one of its affiliated local unions, pipefitters Local 638, to the exclusion of other member unions, plumbers Locals 1, 2 and 371.

In the first appeal, The Association of Contracting Plumbers of the City of New York, Inc. and the Contracting Plumbers Association of Greater New York, Inc. (collectively the "Associations" or "Employer Associations"), appeal from an order of Judge Morris E. Lasker, Southern District of New York, dated July 8, 1987, vacating in two cases, arbitration awards and permanent injunctions issued by Judge Cannella of the Southern District and Judge McLaughlin of the Eastern District.[1] The Employer Associations represent plumbing contractors in the New York City metropolitan area. Each Association has a collective bargaining agreement with one of the New York City area plumbers union locals: The Association of Contracting Plumbers of the City of New York represents plumbing contractors in Manhattan and the Bronx (the "MH Association") and collectively bargains with Local 2, while the Contracting Plumbers Association of Greater

New York represents contractors in Brooklyn and Queens (the "BQ Association") and collectively bargains with Local 1.[2] In November of 1986, each Association entered into arbitration with its respective local union to determine whether their collective bargaining agreements required members of the New York Locals to continue performing work which the UA (their international union) had determined fell within the work jurisdiction of another of its affiliated unions, pipefitters Local 638. Judge Lasker concluded that, because the UA Constitution reserves to the UA the exclusive right to determine work jurisdiction between its member unions, trade line (or work) jurisdiction is a non-arbitrable issue under the collective bargaining agreements between the Employer Associations and the Locals.

In the second case, Locals 1 and 2 were joined by another plumbers union, Local 371, in directly challenging the procedure employed by the UA in determining that the disputed work belonged to Local 638. On January 8, 1988, Judge Lasker granted summary judgment to the defendants (the UA, Local 638 and the Mechanical Contractors Association of New York (the "MCA")) because he determined that no genuine issue of material fact existed and that the UA's procedure under its interpretation of its own Constitution was not patently unreasonable or unlawful, 676 F.Supp. 523.

We agree with Judge Lasker. Accordingly, we affirm the respective orders of the district court (1) vacating the arbitration awards and injunctions, and (2) granting summary judgment to the UA, Local 638, and the MCA.

## I.

Basically this case concerns a longstanding dispute between Locals 1 and 2, and 638 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry. Locals 1 and 2 represent plumbers, while Local 638 represents

---

1. Once the awards and injunctions were challenged, the actions were consolidated before Judge Lasker.

2. Locals 1 and 2 are hereinafter collectively referred to as "the Locals".

steamfitters (or pipefitters) in the New York City metropolitan area. In what is not an uncommon occurrence, the plumbers and pipefitters both claim the exclusive right to perform a certain type of work—in this case, to install combination standpipe-sprinkler risers [3] in New York City buildings.

The plumbers and pipefitters unions have a long history of trade line jurisdiction disputes. In the late 19th and early 20th centuries, two international unions claimed national jurisdiction over the plumbing and pipefitting trades. The International Association of Steamfitters represented steamfitters while the United Association claimed to represent both steamfitters and plumbers. This overlap in jurisdiction claims led to a series of bitter disputes between the local unions affiliated with each international. *See generally* Segal, *The Rise of the United Association: National Unionism in the Pipe Trades, 1884–1924* Chapters 1–2 (Harvard University Press 1970).

The American Federation of Labor intervened, suspended the International Association's charter, and eventually forced the two international unions to merge to form the UA. As part of this merger, plumber and pipefitter local unions in each city had to agree to explicit work jurisdiction designations. The New York City area locals were the last to conform. Finally, after the intervention of the general president of the UA, they agreed on their respective work jurisdictions. This agreement, known as the 1914 Tradeline Agreement, provided that:

> All sprinkler systems, including all fire standpipes connected thereto, shall be installed, complete, by the Steam Fitter, excepting, only, that the Plumber shall set the meter and do all piping from the meter to the water supply main to the street.

> All fire standpipes not connected with the sprinkler system, nor with the [w]ater supply of the sprinkler system, shall be the work of the Plumber.

In anticipation of continuing jurisdictional disputes, the UA Constitution reserved to the UA "the right to decide all matters pertaining to trade and territorial jurisdiction of its affiliated Local Unions...." Pursuant to this provision, the UA granted to Local 638 trade jurisdiction over the pipefitting phase of the industry for the five boroughs of New York City and the counties of Nassau and Suffolk. To Local 1, the UA granted jurisdiction over plumbing work in Kings and Queens Counties, and to Local 2, jurisdiction over plumbing work in the Bronx and Manhattan.

Until 1973, the New York City Building Code required the installation of both "standpipes" and "sprinkler risers" [4] in new buildings. Traditionally, Locals 1 and 2 installed all standpipes and Local 638 installed sprinklers. New York City Local Law 5 of 1973 amended the building code to permit the installation of combination standpipe-sprinkler risers. This precipitated the dispute between Local 638 and Locals 1 and 2 over who should install the combination standpipe-sprinkler risers. Due to court challenges to Local Law 5 and the normal time lag between the creation of an architect's blueprint and actual construction of the combination standpipe-sprinkler risers, the dispute did not come to a head until 1980.

In 1980, Local 638 officially protested the plumbers locals' performance of the combination work by invoking the UA grievance procedures. Pursuant to section 4 of the UA Constitution, which provides for the resolution of intra-union jurisdictional disputes between affiliated unions, then-General President Ward appointed an International Representative, Joseph Petruccelli, to resolve the dispute. On November 19, 1980, Petruccelli awarded the disputed work to Local 638. Locals 1 and 2 appealed his decision to President Ward who affirmed the award on September 17, 1981. Local 2 then appealed President Ward's decision to the UA General Executive

---

**3.** *See* footnote 4, *infra.*

**4.** Sprinkler risers are vertical pipes in buildings which provide the water for automatic fire

sprinkler systems. Fire standpipes are vertical pipes which provide the water for fire hose connections.

Board. The Board overturned President Ward's decision and issued an opinion on April 23, 1982 which concluded that the work was within the jurisdiction of both the plumbers and the pipefitters. Pursuant to Section 219 of the UA Constitution, Local 638 appealed the Board's decision to the next UA Convention.

The convention began on July 28, 1986 in Las Vegas, Nevada. Local 638's appeal was referred to the Committee on Appeals and Grievances ("the Appeals Committee") which met in formal session on Wednesday, July 30, and Thursday, July 31, and considered extensive testimony and other evidence on the dispute.

On the morning of August 1, 1986, before the final session of the convention convened, President Boede (President Ward's successor) held a private meeting with his staff to discuss strategy in the event things went "sour" when the Committee's recommendation reached the floor for a vote. At this time, they discussed the possibility of referring the dispute to a special committee for ultimate resolution.

That same morning, the Appeals Committee voted eighteen to five to recommend denial of Local 638's appeal. Shortly thereafter, the Committee's recommendation was brought to the floor of the convention and its report was read to the delegates. The Committee then moved for adoption of its report. After the presentation of the Committee report, President Boede stated the question and opened the matter for debate. He recognized twelve speakers, two from each of the six microphones set up on the convention floor. About half the speakers supported the Committee's recommendation, while the other half opposed it. After the twelfth speaker had completed his remarks, there were between 50 and 60 delegates lined up at the microphones to speak. The videotape of the convention indicates that several delegates called from the floor to "call the question" and "vote on the question."

Rather than calling for a vote on the question on the floor, President Boede suggested to the convention that the appeal be referred to a special committee. He stated:

I want permission from this convention to appoint a committee and that committee to solve this problem without any appeal, and I would entertain such a motion.

At that point, a number of delegates called out "so moved." President Boede then stated:

The motion has been made to allow the General President to appoint a committee to solve this problem, that decision not to be appealed by anybody.

The videotape confirms that, by voice vote, the motion passed by a significant majority.

The special committee consisted of President Boede, as chairman, and six members selected by him. Two were members of pipefitters local unions, two of plumbers locals and two of combination local unions representing both plumbers and pipefitters. On October 29, 1986, the "Boede Committee" awarded the disputed work to Local 638 with the caveat that all jobs started, awarded, or bid before December 1, 1986 would be covered by the Executive Board's decision of April 23, 1982, which awarded joint work jurisdiction to the three locals. The committee's decision was unanimous.

Locals 1 and 2 notified their respective Employer Associations in early November 1986, that, pursuant to the decision of the Boede Committee, they could not perform the combination work. In response, the Associations invoked the arbitration clauses in their respective collective bargaining agreements. Both collective bargaining agreements required the plumbers' unions to install "all piping, connections and equipment for fire lines and standpipes of every description." The agreements, as interpreted by the Associations, also purported to supersede any contrary provision of the UA Constitution and provided that "[i]n the event of any conflict between the terms, conditions and provisions of the [collective bargaining] Agreement and the Constitution and By-laws of the [Employer] Association and the Union, this Agreement shall be controlling." The UA and Local 638 were not informed of the impending arbi-

trations, and, therefore, took no action to intervene.

On November 20, the arbitrator, William Glinsman, determined that under the collective bargaining agreement between Local 2 and the MH Association, Local 2 was required to continue performing the combination standpipe-sprinkler work. Shortly thereafter, the same arbitrator reached the identical conclusion with respect to the collective bargaining agreement between the BQ Association and Local 1. The Employer Associations sued separately in the Southern and Eastern Districts, under Section 9 of the Arbitration Act, 9 U.S.C. § 9, to have the awards confirmed. There being no opposition by the Locals, Judge Cannella of the Southern District entered a permanent injunction on November 24, 1986, requiring Local 2 to continue performing the combination work. And on December 5, 1986, Judge McLaughlin in the Eastern District entered a similar permanent injunction with respect to Local 1.

The UA did not become aware of the arbitration awards and the actions in the Southern and Eastern Districts until it was notified by Locals 2 and 1 on December 1st and 4th, respectively. Shortly thereafter, the UA, Local 638 and the pipefitters employer group, the MCA (collectively "the intervenors"), obtained from Judge Cannella and Judge McLaughlin orders to show cause why they should not be granted the right to intervene in the two cases. The intervenors also moved to set aside the arbitration awards and injunctions. The parties consented to the intervention of the UA, Local 638 and the MCA. Also upon the consent of the parties, Judge McLaughlin ordered the transfer of the case between Local 1 and the BQ Association to the Southern District on January 8, 1987. The consolidated action was then referred to Judge Lasker. The intervenors claimed that the arbitration awards were the result of collusion between Locals 1 and 2 and their employer groups, and that the injunctions violated the Norris–LaGuardia Act, 29 U.S.C. § 104. The Employer Associations responded that the UA, Local 638 and the MCA lacked standing to challenge the arbitration awards and the injunctions issued by Judges McLaughlin and Cannella, and that the arbitration and injunction proceedings were proper and non-collusive. Judge Lasker determined on June 29, 1987 that the UA, Local 638 and MCA had standing to intervene and that the arbitration awards and injunctions must be set aside because under the UA Constitution, the Locals were not free to arbitrate the question of trade line jurisdiction.

On January 13, 1987, Locals 1 and 2 (later joined by Local 371 of Staten Island) brought a plenary action in the Southern District directly attacking the Boede Committee decision. Specifically, the Locals alleged that President Boede's actions at the convention violated the UA Constitution, the voting and free speech protections of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411, and the duty of fair representation owed by the UA to its locals. They also claimed that Boede improperly selected the members of and influenced the decision of the Boede Committee. Judge Lasker granted the defendants' motion for summary judgment on January 6, 1988. He concluded, *inter alia*, that no genuine issue of material fact existed and that President Boede's actions had violated neither the UA Constitution nor the LMRDA.

## II.

Our jurisdiction over this dispute derives from Section 301(a) of the National Labor Relations Act of 1947 (the Taft–Hartley Act), 29 U.S.C. § 185(a).

■ As a preliminary matter, the Employer Associations claim that the UA, Local 638 and the MCA lack standing to challenge the arbitration awards and injunctions. Judge Lasker found that the injunctions "affect the intervenors in a sufficiently substantial and concrete manner as to confer standing to move to set them aside." We agree.

Although the intervenors were not parties to the arbitration and are not technically bound by the awards or injunctions, the arbitration decisions and injunctions directly affect their rights as they prevent the

UA from exercising its constitutional authority to establish work jurisdiction among its local unions. Also, as counsel for Local 2 argued in the district court, the injunction might be enforced against the UA should it attempt to compel Locals 1 and 2 to stop doing the combination work by threatening to revoke their charters. Certainly, the intervenors have demonstrated a sufficient "stake in the outcome" to have standing under Article III.

Section 10 of the Arbitration Act allows the court to vacate an arbitration award "upon the application of any party to the arbitration" if certain conditions are found to exist. 9 U.S.C. § 10(a)–(e). The threshold question here is whether under § 10, a district court may entertain the motion of a non-party to set aside an arbitration award. There is little question that the UA, Local 638 and the MCA have a substantial interest in the arbitrations and, consequently may intervene as of right under Rule 24(a). Once the right to intervene is established, the intervenor's status is equivalent to that of a party. As pointed out by Professor Moore, where intervention is sought under Rule 24(a) (Intervention of Right), no independent ground of jurisdiction need be asserted. 3B J. Moore, *Federal Practice* ¶ 24.18, at 198–99 (2d Ed.1987). *See also Acuff v. United Papermakers and Paperworkers, AFL–CIO,* 404 F.2d 169, 171 n. 2 (5th Cir.1968), *cert. denied,* 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969). We conclude that the intervenors have standing in this action equal to that of Locals 1 and 2 and, therefore, may move to vacate the arbitration awards and injunctions under 9 U.S.C. § 10.

We are not persuaded by those cases which have held that an individual union member, who was not a party to the arbitration, lacked standing under § 10 to challenge the results of an arbitration between his union and his employer, absent a showing that the union breached its duty of fair representation. *See, e.g., Acuff,* 404 F.2d at 171; *United States Postal Service v. American Postal Workers Union,* 564 F.Supp. 545, 548 (S.D.N.Y.1983). These courts have reasoned that allowing an individual employee to challenge the arbitra-

tion award would undermine the union's ability to pursue grievances on behalf of all its members and would destroy the employer's confidence in the union's authority. *See Acuff,* 404 F.2d at 171. The situation here is quite the opposite. Refusing to recognize the international union's standing to challenge the arbitration awards and injunctions would undermine one of the primary reasons for the UA's existence: to avoid trade line jurisdiction disputes between the local unions.

■ As Judge Lasker observed, at the heart of this dispute is the question whether Local 1 and 2's refusal to perform combination work after jurisdiction over such work was awarded to Local 638 was subject to arbitration under the collective bargaining agreements. He concluded that it was not. We agree.

The UA Constitution is paramount to the individual collective bargaining agreements of its members. The unambiguous language of Section 2 of the UA Constitution provides:

> To the United Association ... is reserved the right to decide all matters pertaining to trade and territorial jurisdiction of its affiliated Local Unions, and no Local Union is conceded territorial jurisdiction other than the current working day in said territory, while to Local Unions is conceded the right to make necessary by-laws and agreements for Local Union government which do not conflict with the laws of the United Association.

Section 4 sets forth the procedure which "govern[s] and control[s] any trade or craft dispute ... between two or more Local Unions." Thus, the UA has reserved to itself both the power to determine jurisdiction in the first instance and to resolve any dispute which arises as a result of that determination. Just as the Locals may not agree to perform any work outside their jurisdiction, they may not agree to arbitrate their compliance with jurisdictional determinations of the UA. The collective bargaining agreements are "subject in all respects to decision of jurisdictional questions by the United Association." *Local*

*Union No. 115 v. Townsend and Bottum, Inc.,* 383 F.Supp. 1339, 1344 (W.D.Pa.1974), *aff'd mem.,* 521 F.2d 1399 (3d Cir.1975). *See also Local 472 v. Georgia Power Co.,* 684 F.2d 721, 728 (11th Cir.1982); *Operative Plasterers' and Cement Masons' International Association v. Metropolitan New York Dry Wall Contractors Association,* 543 F.Supp. 301, 313 (E.D.N.Y.1982).

Locals 1 and 2 have used the intra-union procedures provided in § 4 of the UA Constitution on numerous occasions when work jurisdiction disputes have erupted with Local 638. The record also establishes that the Associations were aware of, and acquiesced in, this dispute resolution technique. For example, several letters from the MH Association to various contractors indicate that the Association was active in attempting to marshal support for Local 2 when the dispute was submitted to the UA for resolution. In the face of this historical evidence, the Associations and the Locals may not now be heard to claim that the arbitration clauses in their respective collective bargaining agreements permit them to arbitrate intra-union jurisdictional disputes. As Judge Lasker pointed out:

> "[i]f Local Unions and employers groups were free bilaterally to arbitrate any jurisdictional or trade line provision in their collective bargaining agreements without regard to the authority of the international union to establish jurisdictional boundaries or the rights of other Local Unions, industrial chaos could well ensue."

Where labor unions provide through a parent organization an orderly means of resolving jurisdictional disputes among themselves, thus avoiding strikes and other labor disputes, there is a strong public interest in recognizing the authority of the parent union. Consequently, we affirm the order of the district court vacating the arbitration awards and injunctions.

In light of our decision that the Locals were not free to arbitrate jurisdictional disputes under the arbitration clauses of their collective bargaining agreements, we need not consider the alleged collusiveness of the arbitrations or the applicability of the Norris–LaGuardia Act to the injunctions.

### III.

In the second action, Locals 1, 2 and 371 and the Employer Associations contend that President Boede's actions at the convention violated the UA Constitution, sections 101(a)(1) and (a)(2) of the LMRDA, and breached the duty of fair representation owed by the UA to its members. They also argue that President Boede improperly selected the members of the Boede Committee and impermissibly influenced its ultimate decision awarding the disputed work to Local 638.

In a thorough and persuasive opinion, Judge Lasker held that in order to prevail, the Locals had to show that either President Boede's interpretation of the UA Constitution was unreasonable or that he acted in bad faith. Concluding that the Locals had not met this burden, Judge Lasker granted the defendants' motion for summary judgment.

Section 219 of the UA Constitution governing appeals to the convention provides: "Any decision, unless otherwise provided for, made by the General Executive Board, shall be subject to appeal to the following convention ... but the decision shall be and remain effective ... until the following Convention decides the appeal, *or otherwise determines and directs.*" (emphasis added). Judge Lasker concluded that President Boede's interpretation of this language to allow him to suggest referring the appeal to a special committee was not unreasonable, especially in light of the fact that an appeal at a previous UA convention was also referred to a committee rather than voted on by the delegates. Furthermore, the mere fact that President Boede sought to avoid a potential schism between pipefitters and plumbers by referring the appeal to a committee was not sufficient to support a claim that he acted in bad faith. He also held that the plaintiffs failed to meet their burden with respect to the claim that President Boede impermissibly sought to influence the decision of the Boede Committee. All six members of the committee submitted affidavits stating that no one

discussed the issue with them prior to the committee meeting, that no one attempted to influence their decision and that the committee report accurately represented their unanimous decision.

With respect to the LMRDA claim, Judge Lasker found "insufficient evidence of record to allow a reasonable juror to conclude that Boede's actions had the effect of impermissibly stifling debate or dissent." Lastly, he noted that "a matter that involves only the relationship between the union and its members and does not also involve the employer is viewed as an internal union matter that does not give rise to a duty of fair representation." (*quoting Price v. UAW*, 795 F.2d 1128, 1134 (2d Cir.1986)).

We affirm the January 6 order of the district court, filed on January 13, 1988, sustaining the trade jurisdiction decision of the UA substantially for the reasons set forth in Judge Lasker's opinion. *See Association of Contracting Plumbers v. Local Union No. 2*, 676 F.Supp. 523, (S.D.N.Y. 1988).

As previously noted, we also affirm the order of the district court filed July 8, 1987, vacating the arbitration awards and injunctions.

The mandate shall issue forthwith.