LOCAL UNION # 575 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY, Susan UHL, Jim Razo, Ernest Razo, Ed Razo, Adrayin Razo, Roger Mulloy, Jason Hatton, Wade Blue, Gary Chandler, Ron Temsik, Mike Lock, Rod Glasser, Teason Daly, Wallace Farley, Mark Miller, Ken Hoffmeyer, Lisa Cordova, Mark Nigon, Tim Parker, Charles Lemmel, Dewey John Montez, Dave Smith, Lester Bosch, Tom Golder, Jose Lebron, Jim Connell, Bernard Grall, Robert Lock and Ron Manzanares, Plaintiffs,

v.

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, and Martin Maddaloni, Defendants.

No. CIV. 97–B–1677.

United States District Court,
D. Colorado.

Feb. 25, 1998.

Rita Byrnes Kittle, Steven L. Murray, MurrayKittle, P.C., James C. Fattor, Denver, CO, for Plaintiffs.

Thomas B. Buescher, Brauer, Buescher, Valentine, etc., Denver, CO, Sally Tedrow, O'Donoghue & O'Donoghue, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs, Local Union # 575 of the United Association of Journeymen and Apprentices

of the Plumbing and Pipe Fitting Industry (Local) and the individual member plaintiffs of the Local (plaintiffs or Local 575) and defendants, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (UA), and Martin Maddaloni (Maddaloni) cross-move for summary judgment on plaintiffs' claims one and two for breach of contract and declaratory judgment. Defendants also filed, pursuant to Fed.R. Civ. P. 12(b)(1), a motion to dismiss claim three for violation of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 *et seq.*, for lack of subject matter jurisdiction, or, in the alternative, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Also pending is plaintiffs' motion to amend the Second Amended Complaint. After consideration of the parties' motions, briefs, evidence, and counsels' argument, I will deny plaintiffs' motion for summary judgment and grant defendants' motion for summary judgment on plaintiffs' claims one and two. I will also grant defendants' motion for summary judgment on its counterclaim and grant defendants' motion to dismiss plaintiffs' claim three for lack of subject matter jurisdiction. I will deny plaintiffs' motion to amend.

## I.

The following facts are undisputed. Plaintiff Local 575, established in 1937, is chartered by the UA as a combined local union representing both plumbers and pipefitters based in Boulder County, Colorado. Most of Local 575's members are trained as both plumbers and pipefitters and work at both trades. The UA is an international union headquartered in Washington, D.C. representing plumbers and pipefitters throughout the United States and Canada. Maddaloni is the General President of the UA.

In May 1997, International Representative W.D. "Bill" Pickens recommended to Maddaloni consolidation of UA Local 575 into UA Locals 3 and 208. Local 3 is a plumbers union and Local 208 is a pipefitters union. Both are based in Denver, Colorado. Locals 3 and 208, are single trade unions known as straight-line unions. The geographical jurisdiction of Locals 3 and 208 covers most of the eastern slope of Colorado. Manzanares Affidavit, ¶ 6; Def. Ex. 19; Baynes Declaration, Transcript pp. 16–17.

Maddaloni appointed a hearing officer to take evidence on whether an order should issue consolidating Local 575 into Locals 3 and 208. After written notice to the three affected local unions, a hearing was held in Denver on June 3, 1997. Representatives of the three unions appeared and presented arguments and evidence in support of their respective positions. Baynes Declaration, ¶ 12; Ex. 19.

On July 8, 1997, the hearing officer issued a report and recommendation finding that it was unnecessary to have three UA locals in the Boulder/Denver area. He emphasized the geographical proximity of Boulder to Denver, the small membership of Local 575, and the unnecessary expense and duplication of services and administrative tasks required to maintain a separate local in Boulder. Def. Ex.20, Baynes Declaration, pp. 2–5. He also stressed the lack of a contractor base in the Boulder area, the difficulties posed to union contractors by Local 575's opposition to freedom of movement of workers, and the importance of freeing up resources for organizing. *Id.* The countervailing arguments raised by Local 575 were considered but did not outweigh the factors favoring consolidation. However, the hearing officer recommended that a mechanism be adopted to address concerns related to single skilled locals including the issues of equitable distribution of work opportunities and accommodation of contractors who are used to working with combined pipefitters/plumbers union members.

On July 16, 1997, Maddaloni issued an order (Order) stating, *inter alia:*

1. effective August 1, 1997, Local No. 575 is consolidated into Pipefitters Local No. 208 and Plumbers Local No. 3 in Denver, Colorado;

2. all current members of Local No. 575 shall be transferred into Local 3 and 208. Plumbers shall be transferred into Local 3 and pipe fitters shall be transferred into Local 208. Members who have both plumbing and pipe fitting skills shall have the option of joining either Local 3 or 208.

Any members who fail to exercise this option by August 15, 1997, will be assigned to Local 3 or 208 based on his or her United Association classification;

3. all assets which are immediately disposable shall be divided between Locals 3 and 208. All other assets, including real property, shall be divided between Locals 3 and 208. The per centage [sic] of assets allocated to Locals 3 and 208 in accordance with this paragraph shall be based on the per centage [sic] of Local 575 members who join or who are assigned to these respective Locals pursuant to this Order of Consolidation;

4. any bona fide debts and liabilities of Local 575 incurred up to the date of consolidation shall be assumed jointly by Locals 3 and 208 in accordance with the formula referenced in paragraph 3.

Def. Ex. 21, pp. 5–6.

Maddaloni also directed Locals 3 and 208: to develop a reasonable system of accommodation and cooperation that will: (a) guarantee the greatest possible employment opportunities for all UA members who live in the Boulder/Denver area; and (b) limit, subject to the restrictions of state licensing laws, the disadvantages faced by signatory contractors who hire both plumbers and pipe fitters.

*Id.* at p. 4. Further, Locals 3 and 208 were ordered to:

explore and develop the following types of joint efforts to the extent that they are not engaged in such efforts already:

a. a master collective bargaining agreement for all signatory contractors operating in their joint jurisdiction;

b. joint training facilities and/or joint training programs;

c. joint organizing programs;

d. joint job targeting and/or industry promotion programs; and

e. joint political and/or legislative activities.

*Id.*

On July 17, 1997, the Order was submitted to the members of the UA's General Executive Board who unanimously approved it. Baynes Declaration, ¶ 13; Def. Ex. 22–23. On September 18, 1997, Local 575 filed formal notice of its appeal of the Order to the next United Association convention to be held in 2001. Def. Mtn. To Dismiss, Ex. 5. On August 1, 1997, plaintiffs filed an action in the District Court, Boulder County, Colorado which defendants removed to this court on August 6, 1997. Defendants counterclaimed seeking declaratory and injunctive relief to enforce the Order.

## II.

### *Summary Judgment Standard*

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 124 F.3d 1321, 1323 (10th Cir.1997).

## III.

Defendants seek summary judgment on plaintiffs' claims one and two and on their counterclaim arguing that the UA Constitution grants the UA and Maddaloni power to issue and enforce the Order. Plaintiffs cross-move for summary judgment contending that the Order is *ultra vires.*

### A. *UA Constitution*

█ The relationship between the UA and its local unions is governed by a written constitution, which was most recently revised and amended in August 1996. Def. Ex. 1. The constitution is a contract between the UA and its affiliated local unions. *See United Ass'n of Journeymen v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). The constitution is binding on members of the UA and its affiliated local unions.

General rules of statutory construction apply when interpreting a labor union's constitution, including the rule that unless specifically defined, a word will be given its plain and ordinary meaning. *Local 317 v. National Post Office Mail Handlers,* 696 F.2d 1300, 1302 (11th Cir.1983).

The word "consolidate" is defined as "to join together into one whole." Webster's New Collegiate Dictionary, p. 242. (1977). Plaintiffs argue that Maddaloni's Order violated the power granted to him in UA Constitution § 84 because the action ordered by him resulted in more than one union. Under the definition urged by Local 575, Maddaloni could only legally order all three unions to consolidate into one union of pipefitters and plumbers. I disagree.

UA Constitution, § 84 provides:

Whenever, in the judgment of the General President, it is apparent that there is a superfluous number of Local Unions in any locality, and that a consolidation would be for the best interest of the United Association, locally or at large, he shall have the power to order Local Unions to consolidate and to enforce the consolidation of said Local Unions, or said territory in one or more Local Unions, provided such course received the sanction of the General Executive Board.

Before this consolidation, there were three unions: 1) Local 575 comprised of pipefitters and plumbers; 2) Local 208 comprised of pipefitters; and 3) Local 3 comprised of plumbers. After the consolidation, there are two unions: 1) Local 208 pipefitters union and 2) Local 3 plumbers union. The effect of the Order is to reduce the number of unions in the region from three to two, one straight line plumbers union and one straight line pipefitters union.

Other courts have sanctioned UA action similar to that taken in this case. *Local 311 v. United Ass'n,* 1988 WL 74053 (D.Conn.1988)(consolidation section "bestows wide discretion on the General President to order a merger"); *United Ass'n v. Local 90,* 1988 WL 146609 (M.D.Pa.1988)(UA constitution authorizes UA to proceed with merger that was appealed to next UA convention); *Local 334 v. United Ass'n,* Civ. 77–1769 (D.N.J.1979)(summary judgment granted to

UA because §§ 2 and 84 "provide ample basis" for consolidation of several dual trade plumber/pipefitter locals into two straight-line local unions), *aff'd,* 669 F.2d 129 (3rd Cir.1982). I agree with these courts. Also, the plain language of UA Constitution § 84 specifically authorizes the General President to consolidate local unions into "one or more" local unions. I conclude that Maddaloni's consolidation Order is not *ultra vires,* but rather is authorized by the UA Constitution, § 84.

**B.** *Standard of review of the Order*

Next, Local 575 argues that if the Order was within Maddaloni's authority, there remain genuine issues of material fact as to whether the Order was unreasonable or in bad faith. Again, I disagree.

■ The decisions of union officials are generally upheld unless they are unreasonable or made in bad faith. 29 C.F.R. Section 452.3 ("interpretation consistently placed on a union's constitution by the responsible union official or governing body will be accepted unless the interpretation is clearly unreasonable."); *Gordon v. Laborers' Int'l Union,* 490 F.2d 133, 137 (10th Cir.1973); *Williams v. International Typographical Union,* 423 F.2d 1295, 1296 (10th Cir.1970)(Congress did not intend courts to "intervene at will in the internal affairs of unions"); *Association of Contracting Plumbers v. Local Union No. 2,* 841 F.2d 461, 468 (2d Cir.1988); *Newell v. International Brotherhood of Electrical Workers,* 789 F.2d 1186, 1189 (5th Cir.1986); *Tomkins Industries, Inc. v. Sheet Metal Workers' Intern. Ass'n, Local No. 2,* 903 F.Supp. 1438, 1442 (D.Kan.1995)(courts generally give deference to the Union's interpretation of its own constitution and will not invalidate [it] unless it is unreasonable). Thus, it is Local 575's burden to show that the Order was clearly unreasonable or in bad faith.

Here, the record of the June 3, 1997 hearing shows that Local 575 had approximately 113 members, Local 3 has more than 675 members, and Local 208 has more than 1,300 members. Def. Ex. 19, p. 17. The geographical jurisdiction of Locals 3 and 208 covers the entire eastern slope of Colorado

with the exception of Boulder County, Local 575's territory. The number of contractors working with Locals 3 and 208 is much larger than those working with Local 575. The consolidation of three unions into two eliminates unnecessary expense and duplication of services and administrative tasks. All of these factors favor consolidation. Also, the countervailing arguments made by Local 575 concerning trade line and work allocation were considered by union officials but, ultimately, were found not to outweigh the factors favoring the consolidation.

Under UA Constitution § 84, the General President is charged with determining the best interest of the UA, locally *or* at large. UA Constitution, § 84. (emphasis added). Thus, when the best interest of the local association conflicts with the best interest of the UA as a whole, it is the General President's duty to determine which shall prevail.

Here, Maddaloni determined that it was in the best interest of the UA at large that Local 575 be consolidated into Locals 3 and 208. Moreover, he took into account Local 575's concerns about consolidating with straight line locals by adopting detailed directives intended to promote joint plumber/pipefitter cooperation and fair distribution of work opportunities and assets in Locals 3 and 208. Under these circumstances, no reasonable fact finder could say that Maddaloni's decision was unreasonable.

Local 575 also argues that the Order was made in bad faith. In support of this contention, Local 575 asserts many factual challenges to Maddaloni's determination that the consolidation was in the best interest of the UA and that the June 3, 1997, hearing was a "sham." Again, I am not persuaded.

There is no dispute that there was evidence taken at the hearing in support of Local 575's position that consolidation was not in their best interest. Several Local 575 members testified in opposition to consolidation. Also, several letters opposing consolidation were submitted from members of the community. However, this alone does not support a finding of bad faith. It is probable that any consolidation finds some opposition. Indeed, even if every contention of Local 575 were undisputed, the General President still had constitutional authority to consolidate in the best interest of the larger association.

Here, Local 575 simply regurgitates the evidence presented at the June 3rd hearing. This bald allegation of bad faith does not justify a court's substitution of its judgment for that of the General President. As stated, Maddaloni, as General President, made a rational judgment that consolidation was in the best interest of the larger association.

Local 575 argues that the June 3, 1997 hearing was a "sham" and, thus, is evidence of bad faith. In support of this contention, Local 575 points to testimony of three members of Local 575 that there were job site rumors of a consolidation in March or April, 1997. However, these rumors are unremarkable because numerous mergers were taking place under new General President Maddaloni. Def. Reply Brief, p. 19. Moreover, another plumber/pipefitter local had been consolidated into Locals 3 and 208 in 1973. Def. Ex. 18. Because Local 575 was a small local union surrounded by the larger Locals 3 and 208, it was reasonable to anticipate consolidation. Obviously, a consolidation determination was under consideration before the hearing. However, evidence of pre-planning does not give rise to an inference of bad faith. *Association of Contracting Plumbers v. Local Union No. 2*, 676 F.Supp. 523, 534 (S.D.N.Y.), *aff'd* 841 F.2d 461 (2d Cir.1988).

■ Plaintiffs next assert that the hearing officer was not impartial. As evidence of his asserted bias, Local 575 states that before the hearing, the hearing officer had breakfast in the hotel restaurant with the representatives from Locals 3 and 208, who were advocating consolidation. Manzanares Affidavit, para. 27. Local 575 members had breakfast in the same restaurant but were not invited to join the hearing officer's table. The same persons had lunch together and again Local 575 members were not invited to eat with the hearing officer. Local 575 argues that these events raises a genuine issue of material fact whether there were *ex parte* communications between the hearing officer and members of Locals 3 and 208. I do not agree.

Local 575 submits no evidence that the hearing officer discussed the merits of the consolidation with representatives of Locals 3

and 208 at breakfast or lunch. Robert Baynes, a UA official present at the breakfast and lunch in question, testified that there was no substantive discussion or input into the hearing officer's decision. Baynes Depo. pp. 91–94. Further, at the hearing, the hearing officer asked each of the representatives of Locals 3, 208, and 575 if they were satisfied they had a "full and fair" hearing and had an "opportunity to put in all the evidence." Def. Ex. 20, pp. 115–117. Each representative responded affirmatively to both questions. *Id* . Under these circumstances, there is no genuine dispute whether the hearing was a "sham" or whether the hearing officer was biased. Accordingly, I will deny plaintiffs' motion for summary judgment and grant defendants' motion for summary judgment on claims one and two.

## IV.

### *Fed.R.Civ.P. 12(b)(1)*

Defendants move to dismiss claim three, alleging violation of the LMRDA pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because: a) the rights plaintiffs allege were violated are not within the rights directly protected by the LMRDA; b) neither Local 575 nor individual member plaintiffs have standing to assert these claims; and c) the LMRDA does not confer federal jurisdiction over this claim because plaintiffs have not alleged and cannot show an act of discipline or punishment.

The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974).

Plaintiffs state in their third claim for relief that the UA adversely affected the rights and/or status of Local 575 and its members by: a) issuing an order that revokes Local 575's charter, seizes its property, and restricts members' right to work as both plumbers and pipefitters; b) removing Local 575 from the Roll Call of affiliated local unions of the UA; c) removing Local 575 from the mailing list to receive UA publications; and d) withholding membership cards of Local 575 members. Second Amended Complaint, para. 50. Plaintiffs claim that these actions constitute unlawful discipline. *Id.*

### A. *Standing*

Defendants contend that plaintiff Local 575 and individual member plaintiffs lack standing to bring claim three for violation of the LMRDA. I disagree as to Local 575 but agree as to the individual member plaintiffs.

### 1. *Local 575*

■ Whether a local union has standing to sue under the LMRDA, § 102, 29 USC § 412, is an issue of first impression in the Tenth Circuit. There is a split of authority in the circuits which have considered this issue. For example, in *Local No. 267 v. Ohio Carpenters Health and Welfare Fund,* 926 F.2d 550 (6th Cir.1991), the court concluded that "only the rights of rank and file members are secured under § 411, not those of local unions or other union components." *Id.* at 556. The Sixth Circuit reasoned that extending the rights of individual members to local unions would not advance union democracy or protect the right of individual members to participate in union deliberations and governance. *Id.* Based on the nature of certain rights under § 411(a), such as the right of free speech, the Ninth Circuit held that the LMRDA guarantees the right of free speech only to individual union members and not to the local union organization or members as a whole. *Local 42–L v. United Brotherhood of Carpenters and Joiners of America,* 73 F.3d 958, 964 (9th Cir.1996). The Third Circuit took a functional approach to the question when it held that a local union does not have standing to bring a § 412 claim to vindicate the § 411(a)(1) rights of its members to attend membership meetings and to vote upon the business of such meetings but does have standing to vindicate the § 411(a)(2) right to assemble freely on behalf of individual members. *United States v. Local 560,* 974 F.2d 315, 346 (3rd Cir.1992).

Section 412 provides:

> Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief as may be appropriate.

The term "person" is defined as:

one or more individuals, *labor organizations,* partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 or receivers.

29 USC § 402(d).

A "member" is deemed to include:

any person who has fulfilled the requirements of membership in such organization and who has neither voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings

. . . .

29 USC § 402(*o*).

The plain language of the Act considers the local union a "person" entitled to sue under § 412 and also a "member" with rights under § 411. Moreover, I cannot say that a local union which would bring suit to assert the rights of individual members under § 412 would not advance union democracy or protect the right of individual members to participate in union deliberations and governance. Therefore, I hold that Local 575 has standing under § 412 to bring this action under the LMRDA.

### 2. *Individual member plaintiffs*

■ Defendants argue that the individual member plaintiffs do not have standing because the Second Amended Complaint contains no specific facts as to the member plaintiffs' circumstances or with regard to any injury, in fact, suffered by any particular member plaintiff. Injury in fact is a necessary predicate to a § 102 action. 29 U.S.C. § 412. The allegations must show more than "mere speculative or theoretical harm." *Whitmore v. Arkansas,* 495 U.S. 149, 157–58, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

Here, plaintiffs provide no specific facts as to particular injuries. Rather, they provide bare allegations that they are members of Local 545 and that the members of Local 545 have suffered or will suffer harm to important membership rights. Such general allegations are not sufficient to establish standing to bring claim three. Consequently, I will grant the UA's motion to dismiss the

individual members' claim three for lack of standing.

### B. *Rights protected by LMRDA § 101*

■ Section 101, 29 U.S.C. 411, known as the Union Bill of Rights, enumerates rights, pertinent to this case, such as equal rights within the labor organization to nominate candidates, vote in elections, and participate in and vote on the business of meetings. *Id.* at § 411(a)(1). Dues may not be increased except by majority vote of the members. *Id.* at § 411(a)(3). Further, "no member of a [union] may be fined, suspended, expelled, or otherwise disciplined . . . unless [the] member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; and (C) afforded a full and fair hearing." *Id.* at § 411(a)(5).

Section 101 does not secure the existence of a local union in perpetuity. *Local 853 v. United Brotherhood of Carpenters,* 1973 WL 1199, 83 L.R.R.M. 2759, 2765 (D.N.J.1973). Section 101 also is silent at to the right to have one's local union appear in a union directory, receive informational mailings, appeal decisions to a union convention, or attend business manager training.

■ The only right listed in claim three which might foreclose a member's exercise of § 101 rights is the allegation that some Local 575 members' membership cards were withheld. Second Amended Complaint, ¶ 50. Failure to have a membership card might foreclose the member's ability to attend union meetings, a § 101 right. However, there is no allegation that any member plaintiff was unable to attend union meetings.

Accordingly, none of the alleged deprived rights is a right enumerated in the LMRDA, § 101. Thus, this court possesses no subject matter jurisdiction based on plaintiffs' allegations of violation of § 101 rights.

### C. *Improper discipline*

Claim three alleges that the Order revoking Local 575's charter, ordering the seizure of its property, and restricting members' right to work as both plumbers and pipefitters as well as actions after the Order was issued such as removing Local 575 from the

roll call of affiliated local unions of the UA, removing Local 575 from the mailing list to receive UA publications, and withholding membership cards of Local 575 members constitute discipline within the meaning of the LMRDA, § 411(a)(5). It is also asserted that actions occurring after this case was filed constitute unlawful discipline pursuant to § 609. Pltfs. Resp. To Def. Mtn. To Dismiss, pp. 9–10. Thus, defendants are said to have violated the LMRDA because these "disciplinary actions" occurred without benefit of written, specific charges, reasonable time to prepare a defense and a full and fair hearing.

Section 101(a)(5) provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 USC § 411(a)(5).

Section 609 states:

> It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section.

29 USC § 529.

■ Whether the conduct at issue constitutes discipline within the meaning of the LMRDA is a question of law. *Hackenburg v. International Brotherhood of Boilermakers,* 694 F.2d 1237, 1239 (10th Cir.1982). The term "otherwise disciplined" has a narrow meaning confined to "regulatory actions that affect a union member's rights or status as a member of the union." *Id.* The phrase "otherwise disciplined" has the same meaning in both sections 101(a)(5) and 609. *Breininger v. Local Union No. 6,* 493 U.S. 67, 90, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). The focus in determining whether a particular union action constitutes "discipline" under the LMRDA is the effect of the action on the member's rights. *Local 37 v. Sheet Metal Workers Int'l Ass'n,* 655 F.2d 892, 896–97 (8th Cir.1981). Union action which interferes with employment opportunities may also be disciplinary in nature. *Caldwell v. ILA Local 1694,* 696 F.Supp. 132 (D.Del.1988).

The phrase "otherwise disciplined" does not include all acts that deter the exercise of rights protected under the LMRDA. Rather, it denotes "only punishment authorized by the union as a collective entity to enforce its rules." *Breininger,* 493 U.S. at 91, 110 S.Ct. at 438–39. The term refers only to actions "taken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership." *Id.* at 91, 110 S.Ct. at 439 quoting *Miller v. Holden,* 535 F.2d 912, 915 (5th Cir.1976). "Discipline" refers to punishment that a union can impose by virtue of its own authority over its members. *Breininger,* 493 U.S. at 91, 110 S.Ct. at 439.

#### 1. *Consolidation*

The essence of this LMRDA claim is its challenge to the act of consolidation itself. It alleges that the Order "was undertaken under color of the UA's right to compel consolidation as necessary to protect the interests of the UA locally or at large," and that it "will adversely affect the plaintiffs' rights as UA members to ... continue working at both trades... and [to] determine by democratic process the affairs of their local union...." Pltfs. Resp. To Def. Mtn. to Dismiss, p. 9. It is asserted that the discipline of consolidation occurred "without benefit of written specific charges, reasonable time to prepare a defense, or a full and fair hearing...." *Id.* at p. 10.

■ "A merger or consolidation, by itself, is not 'disciplinary action' within the meaning of section 101(a)(5)." *Millinery Workers' Union Local 55/56 v. United Hatters, Cap & Millinery Workers' Int'l Union,* 495 F.Supp. 60, 63 (E.D.Mo.1980). By enacting the LMRDA, Congress did not intend to curb or limit an international union's power to merge subordinate local unions. *Brewery Bottlers & Drivers Union Local 1345 v. International*

*Brotherhood of Teamsters,* 202 F.Supp. 464, 468 (E.D.N.Y.1962). Thus, courts have regularly declined to impose § 101(a)(5)'s due process requirements on union consolidations. *See e.g. Local No. 1(ACA) Broadcast Employees v. International Brotherhood of Teamsters,* 419 F.Supp. 263 (E.D.Pa.1976).

More recently, the First Circuit held that a merger order will not be considered discipline unless it is shown to have been ordered in bad faith and to have an adverse effect on membership rights. *Local No. 48 v. United Brotherhood of Carpenters,* 920 F.2d 1047, 1056 (1st Cir.1990). As here, in *Local No. 48,* the local union claimed that the international's merger order violated the union's constitution, that it had been ordered in bad faith, and that it constituted discipline under § 101(a)(5). As I held in section III B, *supra,* the court in *Local No. 48* determined that the international union had advanced a rational explanation for the merger consistent with its constitutional authority. *Id.* at 1051–53. It held that the local's assertions of bad faith premised on the fact that the local was financially sound and the assertion of a "back-room deal" between the international and the surviving local, failed to give rise to a genuine issue of material fact. *Id.* at 1053–55. Also, because no bad faith sufficient to survive summary judgment had been demonstrated on the § 301 claim, the court held that the merger order "was not a disciplinary action within the purview of LMRDA § 101(a)(5)." *Id.* at 1056.

Based on the Rule 56 analysis in section III B, *supra,* the law of this case is that the Order was within Maddaloni's constitutional authority and not issued in bad faith. Thus, claim three, premised on the allegation that the consolidation constitutes discipline, is but another attempt to relitigate plaintiffs' fundamental assertion that the Order is beyond the UA General President's constitutional authority. *See Local No. 48* at 1056. Under these circumstances, the merger based on the Order is not a disciplinary action within the purview of LMRDA § 101(a)(5).

### 2. *Disposition of Local 575's assets*

■ The Order at issue in this case provides that:

3. all assets which are immediately disposable shall be divided between Locals 3 and 208. All other assets, including real property, shall be divided between Locals 3 and 208. The per centage of assets allocated to Locals 3 and 208 in accordance with this paragraph shall be based on the per centage of Local 575 members who join or who are assigned to these respective Locals pursuant to this Order of Consolidation;

4. any bona fide debts and liabilities of Local 575 incurred up to the date of consolidation shall be assumed jointly by Locals 3 and 208 in accordance with the formula referenced in paragraph 3.

Def. Ex. 21, pp. 5–6. It is argued this portion of the Order is not lawful. I disagree.

The United Association Constitution, § 84, grants the UA General President the "power to order Local Unions to consolidate *and to enforce the consolidation....* " provided the General Executive Board approves. *Id.* (emphasis added). There is no dispute that the General Executive Board approved unanimously, the consolidation order concerning Local 575. I view paragraphs 3 and 4 of the Order a valid exercise of Maddaloni's § 84 power to enforce the consolidation. To hold otherwise would deprive the General President of the power to implement lawful consolidations. Moreover, the method by which the assets of Local 575 are to be allocated between Locals 3 and 208 is rational and fair.

■ The next contention is that UA Constitution §§ 132 and 133 support the claim that paragraphs 3 and 4 of the Order are unlawful. Sections 132 and 133 provide:

The funds or property of a chartered and affiliated Local Union may not be divided in any manner among the members, individually or collectively, but shall remain the property of the Local Union so long as seven (7) members remain in affiliation with the Local Union, and so long as the Local Union maintains good standing and remains in affiliation with the United Association.

Local Union funds derived from any source shall be held in the name of the Local Union and shall not be transferred or conveyed to any other person, body, committee or organization, whether incorporated or unincorporated, except that Lo-

cal Unions may establish legal declarations of trust or appoint trustees to hold title to real estate for the benefit of the Local Union.

Neither party cites, and research fails to reveal, a case discussing this issue. However, having decided that Maddaloni's Order is legal and enforceable, Local 575 cannot be viewed as a chartered and affiliated Local Union as contemplated by sections 132 and 133. Maddaloni's Order concerning disposition of Local 575's assets, property, debts, and liabilities at the time of the consolidation is lawful and is not "discipline" as contemplated by the LMRDA.

### 3. *Other actions related to the Order*

It is alleged that removing Local 575 from the Roll Call and the UA's mailing list, and delay in issuing new membership cards constitute "discipline" under the LMRDA. I disagree.

Actions which are accomplished or the result of a valid consolidation order are not "discipline" actionable under the LMRDA. *See Local 853 v. United Brotherhood of Carpenters,* 1973 WL 1199, 83 L.R.R.M. 2759 (D.N.J.1973). Indeed, "mere ministerial acts" are not recognized as "discipline" which would give rise to an LMRDA claim. *See Gavin v. Structural Iron Workers Local No. 1,* 553 F.2d 28, 31 (7th Cir.1977). Section 101(a)(5) is not meant as a catch-all mechanism to draw every ill complained of by a local within the ambit of the Union Bill of Rights. The phrase "otherwise disciplined" is to be narrowly construed. *Hackenburg v. International Brotherhood of Boilermakers,* 694 F.2d at 1239.

Each of the acts complained of here were the result of the valid consolidation order and, thus, do not constitute the requisite "discipline" to provide the basis for LMRDA jurisdiction. Moreover, these acts cannot be described as "punishment authorized by the union as a collective entity to enforce its rules." *Breininger,* 493 U.S. at 91, 110 S.Ct. at 439. Therefore, I will grant defendants' motion to dismiss claim three.

### D. *Motion for leave to amend complaint*

Also pending is plaintiffs' motion for leave to amend their complaint to include claims for illegal dues increase and breach of fiduciary duty, in violation of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 et. seq.

### 1. *Dues increase*

Plaintiffs move to amend their complaint to add a claim for illegal dues increase in violation of the LMRDA, 29 U.S.C. § 411(a)(3).

Although leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), whether leave should be granted is left to the trial court's discretion. *Las Vegas Ice & Cold Storage v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir.1990). Considerations of undue delay, unfair prejudice to the opposing party and futility of the amendment temper the strong policy permitting amendment of pleadings. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Section 411(a)(3) provides:

the rates of dues and initiation fees payable by members of any labor organization ... shall not be increased, ... except:

(A) in the case of a local labor organization, (i) by majority vote....

Section 411(a)(3)(A)(i).

There is no dispute that Local No. 575 union dues are lower than Locals' 3 or 208 dues. Thus, Local 575 members will experience a dues increase as a result of consolidation. Under *Dornan v. Sheet Metal Workers' Int'l Ass'n,* 905 F.2d 909 (6th Cir.1990), however, the proposed amendment is futile. *In Dornan,* the Court held that in a merger situation, "where a proposed dues rate constitutes an increase for *more than a majority* of the members of the merged locals, the rate is an increase within the meaning of section 101...." *Id.* at 916 (emphasis in original). It is undisputed that former Local 575 members would constitute far less than a majority of either Local 3 or Local 208 after consolidation. Thus, the dues increase the Local 575 members will experience after consolidation is not a violation of § 411(a)(3). Therefore, amendment of the complaint would be futile.

*2. breech of fiduciary duty*

■ Plaintiffs seek to amend their complaint by pleading a fifth claim for relief for breach of fiduciary duty in violation of the LMRDA. Proposed Third Amended Complaint, ¶¶ 68–84. The LMRDA § 501(a) states that it is the duty of a union officer:

to hold [the union's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 USC § 501(a).

Plaintiffs' proposed fifth claim for relief contains no allegations that Maddaloni has held or is holding union money or property for improper purposes, failed to manage, invest or expend union assets in accordance with the UA Constitution, dealt with the UA as an adverse party, held or acquired a pecuniary or personal interest conflicting with the UA's interests, or failed to account to the UA for any profit received. Proposed claim five simply reiterates plaintiffs' prior § 301 challenges to the consolidation Order in the guise of a § 501(a) challenge.

■ Section 501(b) states:

When an officer ... or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer ... or representative in any district court of the United States... to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown....

29 USC § 501(b).

Plaintiffs' proposed amended complaint does not allege that Local 575 requested the UA or its governing board or officers to sue or recover damages or secure an accounting or other relief as required by § 501(b). Even if plaintiffs were given the opportunity to comply with § 501's procedural requirements, the amendment fails to state a claim.

In *Head v. Brotherhood of Railway, Airline and Steamship Clerks,* 512 F.2d 398 (2d Cir.1975), plaintiff sought to premise a § 501 action on his international union's adoption and implementation of a restructuring plan which eliminated local lodges and replaced them with local representatives. The Court read § 501 as restricted to fiduciary obligations relating to a union's money or property.

In a broader view of § 501's scope, several circuits have rejected § 501 challenges to union mergers if carried out in good faith and in accordance with the union's constitution. *See e.g. Local No. 48,* 920 F.2d 1047, 1057–58 (1st Cir.1990); *Local No. 1(ACA) Broadcast Employees v. International Brotherhood of Teamsters,* 614 F.2d 846, 850 (3d Cir.1980); *Kahn v. Hotel & Restaurant Employees,* 469 F.Supp. 14, 19 (N.D.Cal. 1977), *aff'd* 597 F.2d 1317 (9th Cir.1979).

Research fails to reveal any Tenth Circuit decision which deals with the scope of § 501 claims. However, under either a broad or narrow reading of § 501, plaintiffs' motion to amend would be futile. As to § 501(b), Maddaloni acted within his authority under the UA Constitution in ordering the consolidation of Local 575 into Locals 3 and 208. *See* section III A., *supra.* Nor were Maddaloni's actions unreasonable or taken in bad faith. *Id.* at III B. Proposed claim five is nothing more than a rehashing of acts alleged in plaintiffs' second amended complaint. Under these circumstances, I will deny as futile, the motion to amend complaint. *Foman v. Davis,* 371 U.S. at 182.

**1164**

E. *Attorney fees and costs*

Defendants seek to recover their attorney fees. There is no statutory authority for recovery of attorney fees in this case. Thus, I will deny defendants' request.

Accordingly, IT IS ORDERED that:

1. plaintiffs' motion for summary judgment on claims one and two is DENIED;

2. plaintiffs' motion for summary judgment on defendants' counterclaim is DENIED;

3. defendants' motion for summary judgment on claims one and two is GRANTED;

4. defendants' motion for summary judgment on its counterclaim is GRANTED;

5. defendants' motion to dismiss claim three is GRANTED;

6. plaintiffs' motion to amend complaint is DENIED;

7. it is DECLARED that:

a. the order of consolidation is valid and enforceable;

b. plaintiffs' failure to recognize and adhere to the order of consolidation is in violation of the United Association Constitution;

c. plaintiffs, and those acting for and in concert with them, are permanently restrained and enjoined from resisting, defying, and refusing to recognize and adhere to the order of consolidation and duly rendered directives thereunder, from refusing to turn over the charter, seal, records, books, assets, and other property of Local 575 to defendant United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada and from taking any other action inconsistent with the order of consolidation;

d. plaintiffs and those acting in concert with them shall abide by, adhere to, uphold, and recognize the order of consolidation and all lawfully and duly rendered directives issued pursuant thereto or in aid thereof;

8. that judgment shall enter in favor of defendants on all claims and counterclaims; and

9. upon filing of a bill of costs within 10 days from the date of this Order, defendants are awarded costs.